And good morning. The first argument case this morning is number 17, 2187, Automation Middleware against Invensys Systems. Mr. Powers. May it please the court. There are two issues raised by this appeal. The first is whether software claims require the incantation of magic words to make them patentable subject matter. Magic words such as a computer-readable medium containing instructions to or something like that in the context of a system claim. I mean, isn't that what our precedent requires? I mean, there are cases that say that very specifically that I think we're bound by. I get, I mean, to the extent you're frustrated, I share the frustration that when you say software, it doesn't inherently suggest that it's going to be done on a computer, but as long as that's the precedent, we can't do anything about it. I think the Atrix case is the case that provides sanity to that otherwise ambiguous law. Yeah, but I don't know that it's all that ambiguous. There are some pretty clear statements from this court earlier than Atrix that suggest, I mean, they say pretty much that you can't patent those kinds of things unless it's done as a process claim, which you don't have, or unless it's connected to computer-readable mediums. Your Honor is absolutely correct that Digitech, for example, which is one of the leading cases on that subject, states those words in unambiguous terms, but not in the context of a software case. Digitech, Neutengen were data claims and signal claims, and in fact, Digitech expressly distinguished software in finding that the data claims at issue there were not patentable subject matter because they had no physical or tangible medium. So, I do not think those statements are unambiguous in the context of a software claim, because A, they did not address a software claim, and Digitech in particular, which is the leading case I think that Your Honor is referring to, expressly distinguished software claims from the data claims at issue in that case. And so, I think in that context, when you then add EnFish and Atrix into the mix, I think that... ...inconsistent with the all-voice case and the idea that Digitech applies to software. Sure, I get that, but I mean, to the extent EnFish is inconsistent with earlier precedent, then that part of it is just wrong. True, but the earlier precedent was not in the context of software, and so, and in fact, Digitech, as I say, expressly distinguished software. So, I do not think there's an argument that Digitech controls over Atrix, for example, because of the seemingly broad language in a different context. And I think Atrix, unlike EnFish, I agree with Your Honor, EnFish did not, was not squarely presented with the issue and did not squarely decide it. But it is consistent with the suggestion in Digitech that software is different from data and signals. And it is highly consistent with Atrix, where the issue was squarely presented and squarely decided. And the issue in Atrix was exactly this, whether, in fact, software should be treated the same as data or signals or differently. And Atrix held that because data processing system, which clearly requires a computer operating software, as there's no basis, I think. But did the claims in Atrix, I haven't read the claims in Atrix, did the claims in Atrix recite that computer readable medium? They did not, and that's exactly the point. The Atrix claims had, the holding in Atrix was implicitly there's a computer operating software. It must be to be operated. So in that sense, it's exactly identical to the claims here. There is one sense in which the Atrix claims differed slightly from here, but not materially. The Atrix court, fairly read, I think, held that there was, these were software claims which required a computer operating software, although the claims did not explicitly require that on its face in hyperbole. But it also had, for example, something that implicitly required a viewer, which would presumably be something tangible as well. And the Atrix court said that the presence of, the implied presence of a computer operating software, which is no different from this case, and a viewer required an assumption. I don't want to cut you off, but I'm frankly more interested in hearing your arguments on what I assume is your second point about why this is an abstract idea. I think that's the more interesting argument, but I'm happy if the court has anything to say. I want to ask you a few questions. Yes. First, do you contest the district court's treatment of 236 patents, Claim 1 and 897's Claim 17 and 543's Claim 1 as representative?  Let me just take you to preemption for a minute. Yes. AMS pled broad preemption in its complaints. And in oral argument, it conceded in response to questioning from the district court that the only way to avoid infringement is to not use translation and motion control. Given the record below, how do you deny preemption? I would not, I think that's not a fair overall complete record of the record below. Because I think what at least defendants or appellees argue was an argument of complete preemption, was an argument that said if you practice the standard, you will infringe. And therefore, everyone who practices the standard, as they all do, must infringe. That does not mean that the standard is the only way to have a middleware layer. Can you provide an example of a motion control process where the active step of translation between one software language or another isn't employed? Of course. The key limitation in this claim, and this goes to the argument on Alice Step 1, is whether we are claiming abstractly the idea of a middleware layer that translates from the application layer down below. And if we did, I think that would fall squarely within this court's precedence of being an abstract idea. What 236 Claim 1 requires is a particular construct of that middleware layer. And the particular construct is one that is divided into so-called primitive operations and so-called non-primitive. Those are just words. I think more than words. It's a specific construct of that layer. And defendants attempt to lampoon that construct by saying, well, some of those is all commands. Which is true, but so would dividing them A through M and N through Z. Right. But this is different, because they are particular types of commands, the result of that construct having particular effects that were not present in the prior art. Primitive commands are those that are the basic commands that every motion control apparatus must do. Move to the right one, move to the left one, move up one, move down one. Those kinds of basic commands that everything must do. The non-primitive commands are ones that might or might not be supported by a particular apparatus. And the example that's given in the specification is, I think, perfect. And that's the example of doing a curve. And the whole point of this invention is that you have a factory floor that may have 20 different devices with 10 different manufacturers. All of which have different software and drivers and different abilities. So let's say you have one device that is specifically programmed to do a curve, or what they call a contour. And another one which is not. If the person sat up typing into their application program on the first one to do a curve, it would do a curve. If you did that with the second one, it would say error, because it cannot do a curve. What the non-primitive construct in the claims permits is for that second one, which doesn't support a curve, to do a curve by a pre-programmed series of up and down and sideways motions that will approximate a curve. So that second device is now capable of doing a curve where it was not before. How does it become capable? Where is the program? Where is the coding? Well, the code is in the 80-page appendix to the patent. There's a 78-page appendix. Okay. Okay. Yeah, 78 pages. What in there specifically describes the claimed improvement? I can't cite you to the particular source code that does that, but that is source code that is from the client. That was the source code that implements the invention. What implements that? You're talking about the contour, right? Translating it for something that doesn't do a contour. Yes. What in there does that? I can't tell you. But I can tell you that specific... Black box. Pardon? Black box. It's not a black box. I mean, the black box cases that Your Honor is used to dealing with are cases where there's a... I know. There's a black box. There's a very skinny spec with no software, no source code, no nothing. It's three or four paragraphs, and this court is rightly skeptical of the contribution of that specification to the useful arts. But, you know, there's a punchline to a joke my dad used to tell, which is, it's in there somewhere. Why don't you find it? The issue was not joined below, so I can't tell you where in 78 pages of source code the particular part to do a curve is. But the fact that there's 78 pages of actual source code, this isn't just made up. This is the source code that was used to implement the invention. That's a real contribution that's different from the very skinny specifications that this court has rightly been skeptical of. That's a very different animal in terms of what it's contributing to the useful arts. But more to the point, to answer your Honor's question, the way the software does that is by when you are programming curve for that second device that otherwise does not support a curve, where in the prior art you would get error, it instead programs a series of left to right and up and downs that will approximate a curve. That's the non-primitive operations that it referred to in the claims. And it's in the claims, it's very clearly in the specification, so it's not a black box, and it's a logical way of approximating that. I think the hard part, and this is a very difficult case, at least for me, is we have a line of cases that I'm sure you're familiar with that basically says if what you're claiming is purely a functional result, that's equivalent to an abstract idea and it's not patent eligible. And in order to get it patent eligible, you have to actually show us how to do that functional result, at least in some minimal way. Precisely. I mean, EnFish was pretty minimal. The algorithm there was no more than two or three steps, but at least it told you what to do. How does yours, because you, it's hard to read this claim, I mean, particularly for somebody that doesn't know much about computer engineering or things like that. It seems pretty functional in one way. If the claim had merely said, as the specification does in a part, to permit devices to do what they otherwise could not do. So you agree that if this claim was written as a software application that can translate between one machine to a bunch of different motion control devices, that that would be ineligible, because it would be claiming merely the notion of translation. I agree that would not pass step one. Step two would, of course, be a separate question depending on what else was in the claim. I agree that would not pass step one. I think it's clear. I don't think there's a reasonable question as to that. But what's added in this claim. Can you go back to this one? And I think it's partly what you've been talking about, but tell me specifically what in the claim, and if you have support in the specification, transforms it from that purely functional result to it tells me how this is done, which is what makes it patent eligible. It's the primitive, non-primitive addition. So that is a way. That's not a result. That's a way. And this court's decisions are quite clear that if you're merely, as your Honor says, if you're merely claiming a result and not teaching a specific method, and this is a specific method, you could have different constructs about how to do motion control apparatus. You could have one that only supported primitive, for example. That would do different things and have different capabilities. Your opponents criticize the creation of the terms primitive and non-primitive. Tell us what happens between them, what these terms just mean. Primitive means, and it's defined in the specification and the claims even, it's an operation that is a basic operation of any motion control apparatus that can't be mimicked by some other motion. So, for example, move up one, move sideways one, something that is the most basic elemental motions that any motion control apparatus must do. And so those are sort of the building blocks. And so every one of these ten devices on the factory floor from ten different manufacturers are going to have to do that. And so you know you can program all of those using the single middleware layer doing those commands. What that doesn't permit is the more sophisticated commands like curve or contour. Doesn't it? I'm sorry? Why doesn't it? So you take a move left, and you add another move left, and then you do a move up, and then you do a move left, and so on, if you want to build your curve. If you programmed, if you merely typed in, so what you have is the person at the top typing in a command that's known. So if you type in move left, it'll know to do that. If you type in curve on the second type of apparatus we're talking about, it'll say error. It won't do it. Unless, of course, you do that iteration, and then you save it as curve, and the next time it's curve. And those are all primitive. Your honors just invented a new device where you save it. That's not in the prior art. So whether that's conventional is step two, obviously, and the IPRs have held it's not conventional. And so while we may think, of course, all you do is do a series of sloughs and rights and ups and downs, and therefore you approximate a curve, and then you can save it, and now all of a sudden you've got it, that wasn't done. Those devices did not support that. That's what the record shows on 12B6, and we are stuck with that record. And what the specification says quite clearly is those devices were not capable of doing a curve. You're not going to have somebody sitting up in the control booth for that one device out of the ten going left one, up one, left one, up one, left one. Well, you could, but it wouldn't be very efficient. It's theoretically possible for sure. My point is it wasn't done. Those devices didn't, and what the specification teaches, which is what the record that we're stuck with on 12B6, is those devices are now, with this invention, capable of doing something they were not capable of doing before. And that's a curve with a person up in the control room typing in curve or contour. And that's because of this middleware layer, and it's not because the middleware layer is merely translating. It is set up in this method of primitive and non-primitive. And to answer your Honor's question about preemption and your Honor's question about why isn't this just doing what they've all done before using standard components, this is a different construct than existed before, and it is not the only middleware layer one could have. There were other middleware layers that are described in a specification. You could certainly have one, as I said, that merely did primitive and not non-primitive. It is that construct, the primitive and non-primitive construct, that makes it a specific middleware layer, not any middleware layer. And it is that construct, which in the ENFISH regime, improves the control device itself, because that motion control device is now capable of doing a curve or contour, which it was not capable of doing before. And that is the difference. That's why this sort of looks more like ENFISH than it does other cases, and that's why there is no preemption of all forms of middleware layers, because only a middleware layer that is structured using the construct of primitive and non-primitive as the way of ordering the commands will infringe. You can imagine any other middleware layer that you like. If it does not have that construct, it will not infringe, and thus is not preempted. Okay. Let's hear from the other side, and we'll save you rebuttal time. Thank you, Your Honor. Mr. Zelsher. Good morning, Your Honors, and may it please the Court. The District Court got a correct blow on the ALICE issues. It found that the focus of the claims for Step 1 was a middle translating layer. That's identical to how AMS has characterized their own invention before the Patent Office and IPRs in 2013, briefing below and briefing on appeal. So the District Court followed exactly what they've been characterizing their invention, and when you look at the claims, that's what we're talking about. We have, and their specification admits it, application programs that speak at a high level, machines that speak at a different level. Translation has always been necessary, and their idea is a, quote, middle layer of translation. So Step 1, the District Court got it right. Their briefing is consistent. Well, I think your friend has conceded that if all they claimed was a middle translation system, that that would be patent ineligible. But the question is, if you have a specific, if you've invented a specific type of middleware translation, would that be patent eligible? If you had a specific translation method, the answer to that question would be yes, in my view. But here, why... Why isn't their emphasis on primitive and non-primitive a specific way of doing this that is both, doesn't preempt and also gives us more than pure functional claiming? It tells us how this particular system is going to interface between the original application and the in-motion control devices. Because they've created two broad words, primitive and non-primitive, that cover all commands known to engineers. Those are just two broad buckets. So say, for example, I said to you that I have a new method of... Was there any claim construction before this was granted? The claim construction is undisputed. There was preliminary constructions, but it's undisputed that, for purposes of Rule 12, we can assume the construction is most favorable to them under Atrix and Twombly and... Well, I mean, the fact that they're broad buckets, if it's a broad bucket that tells you specifically how to do something, why does that make it abstract? It doesn't tell you how to do it. All the claims says, if you look at the claims, all they say is associate. So there's one word in these claims that says, associate the commands from the high level to the low level using these two buckets. Base commands, we gave the example in our brief, a valve. So I have base commands of open 1%, 5%, and 10%. So if I want to open it 5%, I can use a base command. If I want to open it 13%, I have to use a 10 and three 1s. If I want to use a 67%, I've got to use six 10s, a 5, and two 1s. But I thought what your friend... Again, your friend's argument was, with primitive code, you'd have to enter the 1, 1, 1, and 10 separately, but they created a way to combine those and just say 13. Which is incorrect. So their specification admits that non-primitive commands were known. If you look to the appendix record... Well, again, known is a different question than eligible. Well, no, I mean, printers. They say in the context of printers that non-primitive commands were ubiquitous, not just hidden in some reference. They were well-known. Stringing subroutines date back to the 1950s. Sure, but this isn't an obvious case. This is an eligibility case. Correct. Let me ask you this. I have a very high-level question, because you can tell me why I'm wrong, and you probably will. This struck me very quickly as analogous to DIR. This is not purely in the computer realm. It doesn't talk about just computers. It talks about actual physical motion-controlled devices. So why isn't this taking pre-existing motion-controlled devices, adding some kind of, even if you accept that some of this is abstract, adding that to this, to the motion-controlled devices, to come up with a new and improved way to operate them? Just like the, I think it was a rubber-curing machine in DIR, they added a natural law to that, I think, that improved the output. Nobody disputes that what they added was a natural law, but in combination with the actual pre-existing hardware, improved the process. Why isn't that the case here? At least in DIR, there was a specific formula for how you would accomplish the post-application. So this is the problem. Sorry to cut you off, but I get your answer. But this is the problem with these software cases is, how far on the line of purely functional versus we're going to give you specific functions and then assume a skilled artisan, i.e. a computer programmer, can actually program them? Where do we go on that line? Because I think you would, well, maybe you wouldn't, would you agree that if what they claim was a specific way of doing this middleware or this translation, and that they had specific steps of how this translation would occur, that that is arguably patentable under ENFISH and DDR in those cases? I think that's exactly right. In ENFISH. Arguably patentable, depending on what they had. Correct. In ENFISH, there was a four-step algorithm using a self-referential table that was different than other ways. In this particular case, the cases I think are really on point here, verified voting, secured mail, smart systems, and electric group. In those cases, right on top of this case, what the court said is, your instructions for how to do it are too high of a level. Here, there aren't any instructions. I mean, try to understand, it's using... But that's my problem here is, how specific do the instructions have to be if a skilled artisan would look at this and say, well, this is how I would do it. And the specification provides some examples. This isn't a case where we have a three-page specification that says, do this abstract idea on a computer. In addition to the somewhat lengthy specification, we have pages and pages of computer code. I can't read computer code. I have no idea what it means. But somebody's actually been able to sit down and program, make this program to perform this result. I mean, are you requiring them to basically take that computer code and then backtrack into the claims the specific code? No. But I think you have to have an invention in the claims themselves that's more specific than associate one language to a different language using the only two types of commands known to engineers. It has to be more specific than that. To give you an example, if I said to you I have a new method for building a house, and in one bucket I have hammers, and in my other bucket I have everything else. In this case, primitive is base. Non-prim has been defined as everything else. So they have taken every tool known to mankind, which is what Allison Mayo in this court has echoed in their cases, is you can't take the basic building blocks of engineering and own all of that. They say with prim and non-prim that they own the entire waterfront. Engineers, if they had a specific way of using prim and non-prim, if the claims were cited that specific way, they might have more to talk about. But ENFISH was specific. But when you look at the voter verified cases, Electric Group, Smart Systems, those cases say that you have to have instructions with some level of specificity. And I know that we all struggle a little bit with where's that line? But this case, and let me just say one thing about this case. Let me ask you this, though. I mean, this was the core invention. And I know you disagree with this. It may be an obviousness case. What if the core invention was coming up with the idea of let's use primitive commands and also find a way to code them and combine them into non-primitive commands? And that's all they invented. Why isn't that still a patent-eligible invention? Because it's an abstract idea that's not limited in a specific way and claims a function. It's coming to the function of translation from the high level to the low level where their spec at 1228 admits non-primitive commands were used with printers. They didn't even use base commands with printers, according to what their patent says. 1228, Column 3. I suppose the other question, which might be for your learned opponent, is if I handed you a patent which had primitive commands, non-primitive commands, and quasi-primitive commands, would that be non-infringing because it had a third bucket? If there's a third bucket, it would still be covered because the first two are being used. That's the problem. This patent, and that's what you mentioned in preemption, they pled it in their complaint that they cover the entire... There's 450 members and 2,000 products, and why do we get to that level of preemption? Because their claims aren't limited. They were able to sue 20 defendants without even knowing what our code was because translation has to occur between an application program that speaks one language and a machine that speaks another. Those two things have always spoken different languages. Translation has been done... Yes. Translation has been going on since the dawn of time. If I want to translate hi in English to hola in Spanish, you associate one word with the other word. All they've said is the limitation of these claims is we use the two broad buckets covering everything, every tool. Engineers can't use any of those tools to translate between two things that don't talk the same language. I'm not sure how convincing that is to me on the abstraction point because if it's actually an eligible invention, then the fact that they were the first ones to come up with it and it was a great idea and it's now an industry standard shouldn't mean that they're not entitled to patentability. But their spec admits that they weren't the first to come up with it. Well, then you have an obviousness case. Well, no, because if it's an abstract idea, this court... Alice, SAP, this court says you can't take an abstract idea and then limit it to a particular environment and have that be patentable. That's hornbook law from this court on 101 jurisprudence. They've taken translation... Yeah, but that just, again, goes back to assuming that this is an abstract idea. And translation itself is clearly an abstract idea. Even translation between an application system and a motion control device, I think your friend has admitted is an abstract idea. What we're still struggling with is, or I'm still struggling with is, does this go far enough down the line to make it non-abstract? Because I think you would agree, and tell me if you don't, that at some point, if you actually had enough in these claims to show how this was accomplished, it would be patentable under ENFISH, wouldn't it? Yes, the claims have to be more specific. And I'll point something else out. This is unfair, because people have been trying, at least since Alice, to come up with this, but I'm going to give it a shot anyway. I won't hold it against you. Can you give me any kind of guidance on where we draw the dividing line in these software cases between purely functional claiming, which is what a lot of software, I think, stuff is. Because you can't really, nobody can read the code. They're not going to put the code in the claim. So they're going to tell you, do this function, do that function. Where is the line when it's purely functional in a sense of only claiming the result, and functional but still showing you how to do it, because it divides it up into more specific functional steps? Yes. So, you know, I've read all of this court's precedent, at least I think I have. And, you know, I'll give my best shot at that question. There are certain claims when the function is translating from two things that don't understand each other to now here we are looking at primitive and non-primitive. No relationship between those two. Just use those two broad buckets of commands. In that particular case, there's nothing specific. So to answer your question, to me, you're looking at the prior art. And the prior art does it with these steps and in this way. This patent now has gotten more specific. And in the claims, it says we're using these steps. But there has to be more than just use these two broad buckets no matter how you want. There's no defined relationship. It's just use them and then associate commands up here to commands down there. If I want to open my valve 67%, I'm the person who wants to write the code. I know I don't have base commands for 67%. It's like our currency. Isn't that where the skilled artisan can come in and say, well, I don't have base commands for 67, but I have base commands for 50, for 10, for 5, and 2. So I know easily how to write code to combine those four base commands to get you to 67. Yes, that's non-primitive. That's the bucket they're saying that they own exclusively. Well, I understand that. But suppose they're the ones that came up with the idea of non-primitive. I know that that's not the case or you don't think that's the case. But what if they were? Is that sufficiently, if you call it non-primitive and distinguish it from primitive, is that sufficiently non-functional or at least below the line of top-level functional that could be patent eligible? In my view, my strong view, that would still be abstract. Because you're saying translation, the only lead at its specificity, is just use the only two types of commands known to engineers. That's still a non-specific invention. But if that command was never known to engineers, the non-primitive command, suppose you're the first one that came up with the idea of combining primitive codes into a grouping and programming in that way to come up with a more specific result. But isn't that what all the non-primitive ones do? I mean, subroutines have been around since the 50s. So I get your point. You're saying what if. I understand you're asking me a hypothesis. I don't think the facts come close to bearing that out. But just to say, I still think that there's not enough specificity there. Just to say that I've got this. It's almost like a mathematical formula. The hard part for me is, with software, I don't understand where we draw the line between what's ineligible functional claiming and eligible functional claiming. It was easy and in fish because it was a means plus function claim. So by definition, they had to put down the algorithm and they're bound by that algorithm. But that's not a requirement, I think, to get a claim on software. So it makes it easier to tie them to certain specific steps that then turns it into an eligible process. But if those steps are inherent in the way the claims are written and a skilled artist wouldn't understand them, why isn't it then still eligible? Why does it need to be expressed as a means plus function claim? Well, I mean, one of the benchmarks of Alice is claims that are too broad and functional that lead to broad preemption. They've conceded preemption. This is the only way it can be done. They sued 20 defendants without knowing their code because they just said translation has to happen. And we all know that you have to use primitive and non-primitive commands. That's the only way motion control will work. They've never said that you can do motion control not using non-primitive commands. And they didn't invent stringing commands together. Subroutines have been around since the 50s. Their patents admit at the Rule 12 stage. Were the people who invented subroutines in the 50s able to get a patent on those? I don't think so, no. I can't imagine you get a patent on that. You're stringing commands together. It's like our U.S. currency system. I've got a $1 bill, a $5 bill, and a $10 bill. So you think the problem here is not just the abstract idea of translation. It's even if you go a step further, the idea of coding single commands into multiple commands is an abstract idea as well. Abstract and conventional. It's what a quarterback does on the football field. They say, you know, curl, and that means run out 10 yards and then turn left. Stringing commands together to form one, you know, non-primitive command that's made up of other commands has been going on since the dawn of time. So I think that's right, that this suffers from two components. One, functional claiming, but two, stringing commands together is conventional and is abstract, and that's all that they've done. And they've never argued, by the way, below in their appendix that the appendix altered the equation at all. The only time the appendix was raised below was in the context of an indefiniteness argument in Markman. Sure, but, I mean, we have looked in other cases like visual memory where the claims were, you know, kind of like a black box. I mean, I actually dissented and thought they were a black box, so we're bound by that, and looked to the fact that they had very high-level claims, but the specification included an attachment that had code, and we pointed to that code as evidence of eligibility. Because I think we maybe fairly or unfairly assume that if there's code, it actually has a specific algorithm in there to tell you how to do something. And there it is, is the specific algorithm, which this case is missing. I will also point out that they raised non-primitive in their opening brief. We pointed out that subroutines were known, and in their reply brief, if you look at the reply brief, step two, pages 30 to 34 of the brief, the only argument they make is order combination. They did not argue prim and non-prim. So I don't think that they can believe that they can cover the only two buckets of commands in a broad concept like translation. Do you still want to raise the question of NU? Your Honors, unless you have questions, we're happy to take that on the briefing. Okay. All right. Any more questions? Okay. Thank you. Thank you, Your Honors. Okay. We'll hear from Mr. Powers. Thank you, Your Honor. I'd like to start with step two, if I may. Can I just take you someplace else? Of course. Why isn't what your friend said correct, that beyond the abstract idea of translation, the abstract idea of combining single commands into multiple commands also an abstract idea? I'll disagree on the merits, but I'll note that two minutes ago was the first time that argument was made. Well, no, I get that, too. I didn't see that in any of the briefing, but I'm just curious. So I just disagree. The abstract idea, I think, was correctly identified below, the idea of translating from one to the other. I think his example of a curl, that goes to whether you can argue obviousness of this. That crosses a line between 101 and 103, in my mind. Well, the first person that came up with the curl in football probably invented the curl. Exactly. Even though it was known that you could go up and around, if you were the first person to say, well, let's just call it a curl, rather than go six steps up and eight steps over. Exactly. So I think there's two slippery slopes in the 101 analysis. One of them is you can abstractize, if that's a verb, anything up to a certain level, and that's what's happened in a lot of these cases. And so now we've moved the level of abstraction one more level down into concreteness, and said, well, the claim as written is entirely abstract, because even though it has a detail, i.e., use primitive and non-primitive as the construct, as opposed to alphabetical or ten other ways of ordering it, we're going to call that the abstract idea. That's just crossing the line between what's truly abstract and what's concrete, and I think there's no answer to it beyond that. It's unsatisfying because the whole law of 101 is unsatisfying on that question, because there's no bright line. But the reality is, I think they got it right below as to what the abstract idea would be, i.e., translating between a top level and a bottom level. They got it wrong as to whether this claim only claimed that. Listener Powers, when a radio teletype operator said it is machined 60 years ago, typed on a typewriter keyboard and produced a paper tape, then fed that paper tape into a device which translated into zeros and ones, short and long bursts of static, and it was received by another machine which translated it back and then spat out a paper tape which was fed in and typed out a message, was that primitive or non-primitive? That was neither. That was just pure translation. That's just pure translation. Primitive is a different concept. And my friend is right in saying that if you take primitive and non-primitive, that is the entirety of possible commands. Where he's wrong is the part that matters, is that that's not the only way to organize it. Well, let me rephrase the question then. Was typing a key primitive or non-primitive? Neither, I think. It's merely typing in an A, and you could say, I guess, A is primitive in the sense you can't break it down anymore. Right. So in that case, I would say, if you want to try to analogize it, the entire operation was purely primitive because each A is an A and can't be broken down further, and then at the end of the day, if you're typing in bombs are falling, the B would be primitive, bombs spelled out as an entirety. I guess you would say that's non-primitive. Right. But that doesn't go to whether this is abstract. That goes to a 103 analysis. Because what we're talking about is motion control, and you can organize the commands. We're not saying that we invented the concept of non-primitive. We're saying we invented the concept of using primitive and non-primitive as the construct that is being used to do the commands in a middle translating layer. And that's important under step one, because that makes it a specific middleware layer, not any middleware layer. Because you could order that middleware layer by having only primitive. You could order it by organizing it A through M and N through Z. You could order it a lot of different ways and accomplish different things. This specification teaches that if you order it using primitive and non-primitive as the organizing principle, not the fact that you happen to be using them, but as the organizing principle of the middleware layer, then you can accomplish things in that second machine that you could not accomplish before. So if you narrowed your primitive to one step to the right, one step to the left, and every other thing was non-primitive, why couldn't you say that? I don't understand your question. Well, my question is, you're just arbitrarily saying some things are primitive and some things aren't. The claim says what's primitive and non-primitive. The claim says what's primitive... Right. The claim arbitrarily says things that are one step to the right, one step to the left, one step up, one step down. It says the basic commands that all machines must have that can't be mimicked by some other combination of commands. That's its definition of primitive. That's a specific definition of a specific construct. You're always right. You could define primitive in a different way. And that would be a different machine and a different claim. It wouldn't infringe because it doesn't meet the definition. It wouldn't be preempted. You're exactly right. But the point is this claim defines a specific definition of primitive and a specific definition of non-primitive and then talks about how using those two together as the organizing principle of your middleware layer allows you to accomplish something in a motion control apparatus that could not be done before. That's in the specification. Those are plotted facts that bind all courts on 12b-6. And I do want to have at least a small part on step two because we really haven't talked about it in a very specific way. The district court, based on extrinsic evidence, found that the terms primitive and non-primitive had been used before in software. Which, of course, is true. At least primitive had been used before. Not necessarily this definition in the context of motion control apparatus. That wasn't found, nor could it be. And the problem is, first, that fact finding on 12b-6 by the district court was improper under 12b-6. Can't do it. It's inconsistent with the specification, which says this is unknown and hasn't been done. My friend says that column three of the 236 patent admits that non-primitive was used in printers. It does not. Read column three, lines one through 20. It says nothing about non-primitive and expressly says as to printers, what it's doing in printers has no use in the motion control apparatus because it's not the fine control that non-primitive of primitive gives you. So that supposed admission in column three of 236 is not used. I think we need to move on. Do you have one final sentence for us? I'll dedicate that final sentence to the court, Your Honor. Thank you. Okay. Thank you. Thank you both. Case is taken under submission.